A

## CBS RADIO EMPLOYMENT AGREEMENT

THIS AGREEMENT is made and entered into this 7th day of April, 2000, by and between CBS Radio Inc. ("Employer"), owner and operator of Radio Station WZMX-FM ("Station"), Ten Executive Drive, Farmington CT 06032, and J. D. Houston ("Employee").

### 1. EMPLOYMENT

Employer hereby employs Employee and Employee accepts employment to render and furnish artistic and professional services to Employer and its Station as an On-Air Personality in accordance with the terms and conditions set forth herein. All of Employee's services and duties shall be performed when Employer may require, except as specifically limited herein, subject to Employer's direction and control.

### 2. TERM

Subject to the provisions for termination as hereinafter provided, the term of this Agreement shall begin on April 10, 2000 and continue for one (1) year (the "Term"). When used herein, "Term" shall refer to the entire period of engagement of Employee hereunder, whether for the period set forth in the foregoing sentence, or whether terminated earlier as hereinafter provided.

### 3. DUTIES

Both when broadcasting and when otherwise representing Employer or Station, Employee shall perform to the best of his ability the following duties:

(a) Prepare, present, and deliver live and recorded talk shows and other programming requirements, including the voicing of commercials ("Programs");

(b) Perform all duties required of announcers at Station in technical operations and/or by Federal Communications Commission ("FCC") regulations; Employee acknowledges and agrees that the Programs shall be presented under the supervision, direction and control of Employer, Station or designee, and that Employer shall have the unqualified right to change, edit or otherwise alter the content of or the personnel involved in the presentation and production of the Programs. Furthermore, Employee agrees to conform to and abide by the requirements of all laws, rules, and regulations applicable to his services, including but not limited to, all rules and regulations of the Federal Communications Commission or any other governmental agency.

(c) Make public appearances, which may be broadcast on Station, that promote and publicize Station or Employer or aid in the selling of commercial time on Station;

(d) Attend meetings with Station's officers involving the production, direction, and the creation of ideas for Programs;

(e) Meet with, entertain and associate with persons in the entertainment, advertising and other related fields at reasonable times and without additional compensation in furtherance of the commercial value of the Programs;

(f) Perform any ancillary duties, consistent with Employee's position, that Employer may, in its sole and subjective discretion, require from time to time, including but not limited to the occasional dubbing of commercials, in emergency situations, under the direction of Station's Program Director.

Employee's services shall be rendered at the facilities of Station or from such other remote locations as Employer or Station may select.

### 4. WORK WEEK



Employee shall perform his on-air services during a shift of approximately four and one-half (4-1/2) consecutive hours per day from 5:30 a.m. to 10:00 a.m., Monday - Friday of each week. Employer reserves the right to change the days, times and length of the Programs or Employee's performance, provided that Employee may not be transferred to a shift within the hours of 11 p.m. and 5:00 a.m. without his advance written consent.

## 5. COMPENSATION

During the Term and conditioned upon the full and faithful performance by Employee of all of Employee's material obligations hereunder, Employer agrees to pay Employee, as full and complete compensation for all services to be rendered by Employee, all rights granted to Employer and all representations, warranties and agreements made by Employee herein, the following, which payments are subject to such deductions and withholdings as required by law, or to which Employee consents. Employee represents and warrants that this Agreement and all sums payable to Employee hereunder are not and will not be subject to any claim against Employer or Station by any broker, agent, representative or any other person or party, whether or not Employer or Station has actual or constructive knowledge of such claim.

(i) <u>Salary</u>

Annual base compensation, payable on a bi-weekly basis, at the rate of $100,000 per annum.

(ii) <u>Quarterly Bonus</u>

If Employee's Programs achieve one of the ranks set forth below among radio stations in the Hartford Arbitron Metro Survey Area in the Winter, Spring, Summer or Fall ratings periods (beginning with the Spring 2000 ratings book), Employee shall receive a quarterly bonus in the highest applicable amount set forth below, provided Employee performs his services under this Agreement during the full duration of each such ratings period. (Employer shall provide Employee with a copy of the Hartford Arbitron Metro Survey within seven (7) days following receipt of the book by Employer.)

<u>Monday-Friday, 6A-10A*, Persons 25-54, AQH Share</u>

| Rank | Bonus |
|---|---|
| 1-4 | $5,000 |
| 5 | $2,500 |
| 6 | $1,000 |

*or such other daypart to which Employee is assigned

Any bonus earned pursuant to this section shall be paid to Employee in the payroll period next following the date of issuance of the Arbitron ratings book to which it pertains.

## 6. BENEFITS

(a) <u>Benefits</u> Employee shall be entitled to participate in any Employer benefit plans now existing or hereafter adopted for which he may be eligible pursuant to established Employer policy, subject to the provisions of such plans as the same may be in effect from time to time. Employee agrees that nothing contained in this Agreement shall prevent Employer or Station from terminating or modifying any such benefit plan in whole or in part at any time.

(b) <u>Vacation</u> Employee shall be entitled to three (3) weeks per year of fully paid vacation time, and to paid holidays in accordance with the current Station policy during the Term, subject to Employer's absolute approval of the dates when such vacation may be taken.. Vacation rights shall not be cumulative from year to year, nor shall Employee be paid for more than fifty-two (52) weeks of employment in each year irrespective of whether or not vacation rights are exercised.

## 7. PAY OR PLAY

Nothing contained in this Agreement shall be deemed to obligate Employer or Station to use Employee's services or to broadcast any Programs in connection with which he has rendered services. Payment to Employee under the terms of this Agreement shall fully discharge all of Employer's and Station's obligations hereunder. In event of Employee's death, this Agreement shall terminate and Employer shall make all payments accrued and not yet paid as of the date of Employee's death. Employer may make such payments to Employee's legal representative or representatives.

### 8. EXPENSES

Employee, with management's prior express written approval, is authorized to incur reasonable expenses in the performance of Employee's duties hereunder. Employer will reimburse Employee for all such reasonable expenses upon the presentation by Employee of an itemized account and receipts for such expenditures on such forms as may be required by Employer.

### 9. TERMINATION BY EMPLOYER

(a) **Termination for Cause** Employer may terminate this Agreement for cause, as hereinafter defined, at any time. If Employee is terminated for cause, he shall be entitled to compensation that has accrued up to the date of termination, but Employee shall not be entitled to any severance or other payment whatsoever and the covenant not to compete set forth in paragraph 11(d) hereof shall apply to Employee in accordance with its terms. The term "Cause" as used herein shall include, but not be limited to, the following: (1) Employee's continued incapacity for two weeks or more, or for twenty (20) or more Programs in the aggregate during any fifty-two (52) week period, except as otherwise provided in the Family and Medical Leave Act. The term "incapacity" shall mean any physical, mental or other disability rendering Employee incapable of fully performing the services required to be performed by him hereunder or by the applicable job description, including any material impairment of Employee's voice, even with a reasonable accommodation of such disability. Should a question arise as to Artist's ability to perform all the essential functions of the work required under this Agreement or by the applicable job description, Employee agrees to cooperate fully in assisting Station in making a determination of whether a physical or mental disability affects Employee's ability to perform those essential functions with or without a reasonable accommodation, including, without limitation, submission to medical examinations by licensed health care providers designated by Station. Employee will also be asked to help in determining if a reasonable accommodation can be made. Station will give Employee prompt notice of the action it intends to take upon determining that Employee cannot perform all essential functions of the applicable job description and/or the services to be provided pursuant to this Agreement; (2) willful, habitual, or substantial neglect of duties by Employee; (3) any material breach of this Agreement; (4) dishonesty; (5) theft; (6) use or possession of illegal drugs during working hours; (7) use of alcohol during working hours (except for moderate consumption of alcohol during business entertainment in the discharge of Employee's duties); (8) unethical business conduct; (9) repeated negligence in the performance of duties likely to cause or actually causing personal injury or property damage; (10) insubordination; (11) failure to comply with any rules or regulations of Employer or any conduct inconsistent with the policies, procedures, or best interest of Employer; (12) any violation of FCC rules and regulations, including rules relating to payola and/or plugola; (13) excessive absenteeism or tardiness; and (14) Employee's failure or refusal to perform the services required of Employee under this Agreement for a period of two (2) or more days for reasons other than vacation, illness, accident, injury, incapacity or authorized leave of absence.

If Employee fails fully to perform any one or more of the obligations hereunder, or if Employee breaches any representation, warranty, term, obligation or condition of this Agreement, Employer shall have the right at its sole option, in addition to the rights set forth in this Agreement and any other right at law or in equity, to: (i) discipline Employee by suspension from work and/or suspension of or reduction in pay or otherwise and/or; (ii) withhold such amount as may be appropriate from any compensation due or to be due to Employee, to reimburse Employer for any damages, direct or indirect (including, but not limited to, reasonable legal fees and other expenses), which Employee's failure and/or breach has caused and/or; (iii) extend the Term of this Agreement for a period equal to that of the non-performance.

Employee. Station shall have seven (7) days from receipt of notice from Employee of any such offer within which to notify Employee of Station's election to accept said offer; however, in no event shall such seven (7)-day period commence prior to the expiration of this Agreement, but if such offer is presented to Employer before expiration of the Agreement, Employer shall not unreasonably delay its notice of its decision whether to accept or decline it. . Notice to Station of any such offer must be in writing, set forth all details of such offer and contain the signature of both the offeror and offeree, acknowledging the validity of the offeror's offer and the offeree's willingness to accept such offer. Station shall be deemed to have accepted Employee's offer by acceptance of all terms thereof reducible to a determinable amount of money. If Station does not accept any offer of which Employee duly notifies Station, and Employee does not enter into employment by or provide services for the third party on the terms and conditions set forth in said offer, the terms of this paragraph 11(c) shall apply to any subsequent offer to or by Employee. For purposes of this paragraph 11(c) and paragraph 11(d) hereof, a station shall be deemed to be within a fifty (50)-mile radius of Station if any location within the community of license of such station or the transmitter of such station is within a fifty (50)-mile radius of the transmitter or any part of the community of license of Station.

(d) **Covenant Not to Compete** Employee is familiar with the business of Employer, the commercial and competitive nature of the industry, and the substantial commitment Employer makes in developing Employee as a personality, and Employee acknowledges Employee's extraordinary and unique services and abilities which enable Employee to seek and obtain similar employment outside Station's market. Employee further recognizes that the value of Employer's business would be injured if Employee obtained comparable employment within Station's market. It is therefore agreed that after this Agreement expires or is otherwise terminated, for a period of six (6) months, Employee shall not appear, perform, or allow his voice or picture to be heard or transmitted live or by recording on any radio or television station within a fifty (50)-mile radius of Station as defined in paragraph 11(c). The compensation set forth in paragraph 5 above serves as full consideration for this covenant not to compete.

## 12. ADVERTISING AND PUBLICITY

(a) Employee agrees that Employer has the right to use and license others to use Employee's name, professional name, nickname, recorded voice, biographical material, portraits, pictures and likenesses for purposes of trade, advertising, promotion and publicity in connection with the institutions, services and products of Employer and its sponsors; provided, however, that no direct endorsement by Employee of any product or service shall be used without Employee's consent and Employer shall use reasonable efforts to keep Employee informed of such uses.

(b) Employee agrees that he shall not use or authorize the use of his name, nickname, recorded voice, biographical material, portrait, picture or likeness to advertise, promote, or publicize in any manner any institution, product, or service for any person or entity other than Employer or its affiliated entities without obtaining the prior express written consent of Employer, which consent shall not be unreasonably delayed or withheld.

(c) Employee agrees that he shall not authorize or release any advertising or promotional matter or any other publicity in any form with reference to his services hereunder or the Programs of Employer without Employer's prior express written approval.

## 13. PROPERTY RIGHTS

With respect to and all Programs and announcements in connection with which Employee renders services hereunder the titles and content thereof, and each and every format, idea, theme, script, characteristic, element and incident thereof, with respect to all results and proceeds of any and all of his services hereunder, and with respect to all materials created or developed by Employee pursuant to this Agreement (whether by Employee acting alone or in conjunction with other persons), Employee agrees and acknowledges that Employer, its successors and assigns are the sole and exclusive owner, that all rights, title, interest and property therein and thereto are vested in Employer for all uses and purposes throughout the world and that Employee shall claim no right, title, interest, powers, privilege, control or property of any kind whatsoever therein or thereto. Employee represents and warrants that all ideas, creations, literary, musical and artistic materials and intellectual properties furnished by Employee hereunder will be his own original creation except for materials in the public domain or materials that he is fully

licensed to use, and that all materials furnished by Employee and the use thereof by Employer, Station or its designees will not infringe or violate any rights of any kind whatsoever of any individual or entity. At no time, during the Term or thereafter, will Employee, directly or indirectly, render any service on or in connection with any radio program that is identified by any name or title confusingly similar to the name or title of a program on or in connection with which he has rendered services for Employer or Station. Notwithstanding the foregoing, Employer shall have no control over the use by Employee of his own real or professional names or nicknames after termination or expiration of this Agreement. All titles, forms and methods of expression, and material, work and ideas conceived, created or executed by Employee in connection with Employee's services hereunder shall be subject to the foregoing provisions of this paragraph. Employee shall execute such further and additional instruments as Employer may reasonably require to effectuate the purpose of this paragraph and to vest in Employer all such property rights.

It is understood and agreed that in the exercise of the rights granted to Employer hereunder, Employer or its designees may, at their election, at any time and from time to time, exploit and turn to account any and all rights granted to Employer hereunder, and the Programs and recordings thereof produced pursuant hereto, in any manner and by any means, whether now known or hereafter devised, including, but not limited to, by way of radio broadcasting or otherwise. For the purpose of this Agreement, the terms "recording" and "recordings" as used herein shall mean and include any recording or recordings made (whether before, during or after a broadcast transmission) by tape, wire, film, disc or any other similar or dissimilar methods of recording audio portions of Programs, whether now known or hereafter developed. All recordings of all Programs and all rights therein, as between Employee, on the one hand, and Employer on the other, shall be the sole and absolute property of Employer for any and all purposes whatsoever.

Without in any way limiting Employer's rights as expressed elsewhere herein, it is expressly understood that the Programs may be broadcast and rebroadcast over Station or other radio stations, whether or not licensed directly or indirectly to Employer or its affiliated entities, as Employer shall from time to time elect and on a sustaining and/or commercially sponsored basis by any method now or hereafter known by such sponsor or sponsors as Employer may select or authorize in Employer's sole discretion and/or on any other financial basis, whether now known or hereafter developed. Notwithstanding the foregoing, in the Event that Employer desires to syndicate Employee's Programs during the Term, it agrees to enter into discussions with him in good faith as to whether additional compensation is due.

It is understood and agreed that the rights granted to Employer by this Agreement include the broadest possible right to cut, edit, change, add to or subtract from the materials created hereunder and the Programs that include Employee's services, and to combine one Program with another or with other Programs, and Employee hereby waives all so-called Author's Rights.

Upon expiration or termination of this Agreement, Employer shall retain the right to sell, syndicate or license for broadcast the Programs in which Employee appears or in which his voice, sobriquet, biography, recorded performances, picture, portrait, caricature or likeness is utilized. Said Programs may be licensed for broadcast or used for public or private exhibition without additional compensation to Employee.

14. **CONFIDENTIALITY**

Employee acknowledges that, in the course of Employee's employment, Employee will have access to confidential information, trade secrets, records, data, specifications and secret inventions and other knowledge (hereinafter collectively referred to as the "Confidential Information") owned by or in the possession of Employer and/or its related companies. All Confidential Information shall be and remain the property of Employer and/or its related companies, as the case may be. Employee agrees that during and after Employee's employment by Employer, whether pursuant to this Agreement or otherwise, Employee shall not, without the prior written consent of Employer, disclose to any individual or entity for any reason or purpose whatsoever, other than in the regular course of business of Employer and/or its related companies, any Confidential Information of Employer and/or its related companies.

15. **CONDUCT RELATING TO OTHER EMPLOYEES**

Employee agrees that he shall not induce or attempt to induce any employee of Employer or any affiliate of Employer to render services for any other person or business nor shall Employee participate in any scheme or arrangement the purpose of which is to cause any of the employees of Employer or its affiliates to terminate their agreements or employment with the same.

### 16. MAIL

Employer may open and answer, and authorize others to open and answer, all mail, communications and other correspondence addressed to Employee or otherwise relating to Employee's services hereunder provided that (i) such correspondence is not marked **PERSONAL**, and (ii) no correspondence shall be answered under Employee's name or signature without his approval. Employee shall refer to Employer all inquires, mail, communications or correspondence received by him relating to his services hereunder. Employee agrees that Employer shall not be responsible for any inadvertent breach of this provision.

### 17. INDEMNIFICATION

Employee agrees and acknowledges that he shall indemnify and hold Employer, its parent corporation and affiliated entities, any stations or systems over which the Programs are broadcast and/or distributed, their shareholders, officers, directors, agents, employees, sponsors, successors and assigns harmless from and against any and all claims, debts, demands, obligations, costs and expenses (including, but not limited to, liabilities assumed by Employer in connection with Employee's services and attorney's fees and disbursements) arising out of or resulting from the making or enforcement by Employer of any right, privilege or option hereby granted to it, any performance or utterance (ad lib or otherwise) by Employee that is broadcast on Station or made while Employee is performing services for Employer, any unauthorized act done by Employee under this Agreement, the use of any material furnished by Employee hereunder, any act or omission of Employee prior to the date of this Agreement or the breach by Employee of any representations, warranties or provisions of this Agreement. Employer shall have the right to assume the defense of and control the disposition of any such claim or litigation, whether by compromise, settlement or other resolution, and Employee shall fully cooperate with requests of Employer to such end. Employer or Station's approval of any material furnished by Employee shall not constitute a waiver of Employee's indemnity with respect thereto. Employee shall notify Employer promptly of any litigation or claim to which any indemnity hereunder may apply. The expiration or termination of this Agreement shall not affect the continuing obligations of Employee as indemnitor.

Station will at all times indemnify and hold harmless Employee from and against any and all claims, damages, liabilities, costs and expenses, including, without limitation, reasonable counsel fees, arising out of the use of any materials or services furnished by Employer in connection with the production, rehearsal or broadcast of any of the Programs; provided, however, that Employee shall promptly notify Employer of any claim or litigation to which the indemnity set forth in this sentence applies; and provided further, that at Employer's option, Employer may assume the defense of any such claim or litigation to which the indemnity set forth in this sentence applies, and Employee shall fully cooperate with requests of Employer to such end, in which event Employer's obligations with respect thereto shall be limited to the payment of any judgment or settlement approved by Employer in connection therewith.

### 18. SERVICES UNIQUE; INJUNCTIVE RELIEF

Employee recognizes that the services to be rendered by Employee hereunder are of special, unique, unusual, extraordinary and intellectual character, are of an artistic and professional nature, require skill of the highest order, and further are of peculiar value, the loss of which cannot be adequately compensated for in damages; thus, in the event of Employee's breach or the threat to commit a breach of this Agreement by not completing the one (1)-year term or failing to comply with the provisions of paragraph 11, Employer shall be entitled, as a matter of right, without further notice, in addition to any other remedies it may have, to seek judicial relief by way of injunction, as well as monetary relief to compensate Employer for, inter alia, lost revenue, lost profit, lost earnings and any other damages resulting from such breach by Employee. Employee agrees that Employer shall not be required to file any bond in connection with any such request for injunctive or other equitable relief.

### 19. ASSIGNMENT

Employer shall have the right to assign this Agreement, in whole or in part, to any of Employer's affiliated entities or to any other party, and, except as otherwise agreed between Employer and Employee, shall assign the Agreement to any person or entity who succeeds to ownership of Station or any future licensee of Station. Employee agrees and acknowledges that he may not assign this Agreement or any of his rights hereunder under any circumstances.

### 20. NOTICES

All notices, consents and approvals required hereunder shall be in writing and shall be given (i) to Employer by personal delivery to an officer of Employer and to the General Manager of Station by certified or registered mail, addressed to WZMX at its then current address, Attention: General Manager; and (ii) to Employee, by personal delivery or by prepaid telegram or certified or registered mail addressed to Employee at his address as it appears in the records of Employer, with a copy to Amy R. Goldson, Esq., 4015 28th Place, N.W., Washington, DC 20008. Either party may change its said address for mailed notices, consents, or approvals by written notice to the other party in accordance with the provisions of this paragraph. Notice by telegram or mail in accordance with the provisions of this paragraph shall be deemed to have been given at the time of dispatch.

### 21. PERSONNEL POLICIES AND SECTION 317 AND 508 OF THE COMMUNICATIONS ACT

(a) Employee represents that Employee has read Sections 317 and 508 of the Communications Act of 1934 as amended, copies of which are attached. Employee warrants and represents that Employee will comply with any and all policies, rules and regulations as Employer may from time to time adopt in order to fulfill its responsibilities as a broadcaster with respect to said Section 317 and the public policy involved.

(b) Employee warrants and represents that, to the best of his knowledge, information and belief, he has not accepted, agreed to accept, or paid or agreed to pay any money, provide service or receive any valuable consideration except the compensation payable hereunder from Employer, as defined in Section 508 of the Federal Communications Act of 1934, as amended, for the broadcast of any matter contained in any Program. Employee further covenants, warrants and agrees that during the Term Employee will not accept or agree to accept (except from Employer) or pay or agree to pay any money, provide service or receive any valuable consideration, as defined in Section 508 of the Federal Communications Act of 1934, as amended, for the broadcast of any matter contained in any Program. In the event such consideration has been or is offered, accepted, or paid, voluntarily or involuntarily, full disclosure must be promptly made to Employer. Any breach of this paragraph 21 shall give Employer the right to terminate this Agreement for cause, including all payments to be made hereunder.

(c) Employee will comply with any and all policies, regulations and procedures Employer may from time to time adopt. With respect to Section 508 of the Communications Act of 1934, as amended, Employee will complete the Annual Statement and Questionnaire and promptly return it to Employer. Employee will submit, at Employer's request, written reports pertaining to his services or conformance with policies, regulations and procedures of Employer.

### 22. RESOLVING DISPUTES

Employee and Employer and its affiliated companies and entities agree that any controversy or claim other than provided in Paragraph 18 above arising out of or in any way relating to this Agreement or to a breach or alleged breach of this Agreement, including, but not limited to, any and all disputes concerning the termination of this Agreement by Employer, shall be settled by final and binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "Association") and the judgment upon any award rendered by the arbitrator may be entered in any court of competent jurisdiction unless otherwise provided in this Paragraph 22. Employee and Employer further agree that, at Employer's sole discretion, any claim by Employer arising out of Employee's breach or threatened breach of this Agreement may be submitted to judicial proceedings rather than arbitration and Employer shall have the right to seek injunctive relief as well as damages in a competent court of law.

Any demand for arbitration must be filed with the American Arbitration Association in Connecticut and must be served on the other party within ninety (90) days of the alleged wrongful act. There shall be one arbitrator who shall be appointed by the parties in the following manner: the Association shall furnish the parties with a list of potential arbitrators. If either party objects to all the names on the list, the Association shall provide the parties with an alternative list of potential arbitrators, provided, however, that in no event may the parties review more than three (3) lists. Once a particular list has been agreed upon by the parties, the parties shall alternately eliminate unacceptable arbitrators until only one name remains. The remaining person shall be appointed arbitrator. The parties agree to draw lots to decide which party shall remove the first name from the list. Each party shall pay the fees of that party's own attorney, and the expenses for that party's witnesses as well as all other expenses connected with the presentation of the party's case. All other costs of arbitration, including the costs of any record or transcript of the arbitration proceeding, all administrative fees, the fee of the arbitrator, and all other fees and costs shall be borne equally by the parties. The arbitrator shall not extend, modify or suspend any of the terms of this Agreement or modify or disregard the reasonable standards of business performance established in good faith by Employer. The decision of the arbitrator within the scope of this submission (as provided by this Paragraph) shall be final and binding on all parties, and accordingly, the parties agree that any right to judicial action in this matter subject to arbitration hereunder is expressly waived (unless otherwise provided by applicable law), except the right to judicial action to compel arbitration or to enforce the arbitration award or as provided in this Paragraph, or except in the event arbitration is unavailable to the parties for any reason. If the rules of the Association differ from this Paragraph, the provisions of this Paragraph shall control.

## 23. RIGHTS TO INSURE

Employer shall have the right to secure in its own name, or otherwise, at its own expense, life, health, accident or other insurance covering Employee and Employee shall have no right, title or interest in or to such insurance. Employee shall reasonably assist Employer in procuring insurance by submitting to a medical examination (with his own physician present, if he so elects) and by signing such application and other instruments as may be required by the insurance carriers to which the application is made for any such insurance.

## 24. UNAUTHORIZED ACTS

Employee shall refrain from any offensive or distasteful remarks or conduct the broadcast of which Employer believes would not be in the public interest or may jeopardize Employer's federal license to operate Station, and shall faithfully comply to the best of his ability with all of Employer's directives relating to on-the-air material and the manner of delivering or using the same, of which directives Employee has received prior notice.

If Employee should commit any act or become involved in any situation or occurrence which, in Employer's reasonable opinion, will bring Employee into public disrepute, contempt, scandal or ridicule, to provoke, insult or offend the community, or to reflect unfavorably upon Employer or Station or any of its sponsors, Employer shall have the right to terminate this Agreement and Employee's employment hereunder for cause. The foregoing shall not limit Employer's right to terminate for any other cause.

## 25. FORCE MAJEURE

If the regular broadcast operations of Station are suspended because of an act of God, inevitable accident, fire, lockout, strike or other labor dispute, riot or other civil commotion, act of public enemy, enactment, rule, order or act of any government or governmental instrumentality (federal, state or local), failure of broadcast facilities, failure or delay of transportation facilities, or other cause of a similar or different nature not reasonably within Station's control, and if any such suspension period shall exceed six (6) consecutive weeks, Employer may, by written notice, terminate this Agreement with no further liability hereunder. During the continuation of such suspension of the Station's regular broadcast operations, Employer shall not be required to pay any sums to Employee. No such suspension shall operate to extend the Term.

## 26. GENERAL

(a) "Sponsor(s)" as used herein shall mean any and all advertisers whose commercial material is to be or is incorporated in any one or more Programs or announcements, live or recorded, broadcast over the facilities of Station and shall include any advertising agencies acting on behalf of such advertisers.

(b) Employee represents and warrants that he has the full right and power to enter into and perform this Agreement in accordance with its terms, and that Employee is under no obligation whatsoever that will or might prevent Employee from fully performing his obligations under this Agreement.

(c) This Agreement contains the entire understanding of the parties and shall be construed according to the laws of the State of Connecticut, supersedes any and all prior oral or written understandings and arrangements, and cannot be changed or modified orally.

(d) This Agreement shall be binding upon and inure to the benefit of the parties, their legal representatives, successors and, subject to the provisions of this Agreement relating to assignments, their assigns.

(e) This Agreement shall become binding when executed by Employee and an authorized official of Employer, and until then shall have no force and effect.

(f) Any provisions of this Agreement which may be prohibited by law or otherwise held invalid shall be ineffective only to the extent of such prohibition or invalidity and shall not invalidate or otherwise render ineffective the remaining provisions of this Agreement.

(g) All remedies provided in this Agreement shall be cumulative and the exercise of one shall not preclude the exercise of any other remedy for the same event or any other event; nor shall the specification of remedies herein exclude any rights or remedies at law or in equity.
The delay or failure of either party to assert or exercise any right, remedy or privilege hereunder, with actual or constructive notice or knowledge of the breach of any representation, warranty or provision herein, shall not constitute a waiver of any such right, remedy, privilege or breach provided such action is within a reasonable period of time. No waiver shall in any event be effective unless in writing, and it shall be applicable only in the specific instance for which given.

(h) Employee acknowledges that the terms of this Agreement have been fully explained to Employee and that Employee understands the nature and extent of Employee's rights and obligations under this Agreement and has been given the opportunity to have this Agreement reviewed by counsel of Employee's choice. Employee further acknowledges and agrees that, by signing this Agreement, Employee is waiving Employee's right to a judicial determination on any disputes arising out of or in any way related to this Agreement, with the exception of a judicial order to compel arbitration or to enforce an arbitration award, or a dispute submitted to judicial proceedings at Employer's election as provided in paragraph 22 of this Agreement.

(i) Each party to this Agreement shall bear its respective costs and expenses and shall pay all expenses (including legal fees) incurred by it in negotiating, closing and carrying out the transactions contemplated by this Agreement.

27. TITLES

The titles of the paragraphs of this Agreement are for convenience only, and shall not in any way affect the interpretation of any paragraph of this Agreement or of the Agreement itself.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

EMPLOYER

CBS Radio Inc.

By _____
David Pearlman, Chief Operating Officer

By _____
Suzanne McDonald, V.P./G.M.
WZMX-fM

EMPLOYEE

By _____
J. D. Houston