UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WENDELL "JD" HOUSTON,<br><br>       Plaintiff,<br><br>vs.<br><br>INFINITY RADIO LICENSE, INC.,<br>d/b/a WZMX/FM HOT 93.7, VIACOM,<br>INC., INFINITY BROADCASTING<br>CORPORATION, INFINITY RADIO,<br>INC., INFINITY MEDIA<br>CORPORATION, and CBS RADIO,<br>INC.,<br><br>       Defendants. | Civil Action No. 3-03-CV-0130 (AWT) |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56 and Local Rule 7(d), defendants (collectively, "Infinity") respectfully submit this reply brief in support of their motion for summary judgment.

### INTRODUCTION

Plaintiff's opposition brief ("Pl. Opp.") begins with a Facts section, but the first several paragraphs are not facts but a nearly word-for-word repetition of the introductory section of the Complaint. Those allegations are also parroted, again nearly verbatim, in the first several paragraphs of the plaintiff's affidavit. The copying is not surprising, because those paragraphs tell a story that the plaintiff has no admissible evidence to support. He argues several times, for example, that Infinity hired him only begrudgingly because the company (he alleges) was under pressure from activists and threats of legal action to improve on its record of hiring minorities. Yet not a single document supports that tale, and no witness before the Court establishes that he or she has any personal knowledge of any of those facts. Indeed, as shown in the accompanying

BNLIB1 2719v1

motion to strike, the substantial majority of claims made in the affidavits submitted in opposition fail the evidentiary requirements of Rule 56(e).

Plaintiff's burden on summary judgment is not merely to show that he can tell the jury a story; he must demonstrate that he has sufficient <u>admissible</u> evidence that a reasonable jury has a basis grounded in proof to believe it. This plaintiff cannot do that. He has no proof of discriminatory motive; rather he has a laundry list of complaints about interactions with his managers but without any evidence that they acted as they did because of his race or age. On that critical point, in the end, his argument remains the inadequate one he offered in his deposition: "Because I'm black and she is white." Defendants are entitled to summary judgment.

## ARGUMENT

We respond to plaintiff's arguments in the same order presented in his opposing brief.

A.    <u>Legal Standard</u> (Pl. Opp. at 11)

Plaintiff begins by significantly understating his burden on summary judgment. It is certainly true that the initial burden of establishing a "prima facie case" under the familiar <u>McDonnell Douglas</u> approach is minimal – indeed, for purposes of this motion, defendants do not contest that plaintiff meets that initial hurdle.[1] But that is not enough; once Infinity responds by articulating legitimate reasons for its actions – also a minimal evidentiary burden – any presumption of discrimination "drops from the picture." <u>Weinstock</u> v. <u>Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000). To survive summary judgment, plaintiff must go further: he must show that he has sufficient admissible evidence that a reasonable jury could find Infinity's reasons for the non-renewal of his contract to be both false and, separately, a pretext for illegal discrimination. <u>See, e.g.</u>, <u>Reeves</u> v. <u>Sanderson Products, Inc.</u>, 530 U.S. 133, 142 (2000); <u>Weinstock</u>, 224 F.3d at 42 ("it is not enough to disbelieve the employer; the factfinder must also believe the plaintiff's explanation of intentional discrimination"); <u>Lizardo</u> v. <u>Denny's, Inc.</u>, 270 F.3d 94, 104 (2d Cir. 2001); <u>James</u> v. <u>New York Racing Ass'n</u>, 233 F.3d 149, 152 (2d Cir. 2000)

---

[1] <u>McDonnell Douglas</u> v. <u>Green</u>, 411 U.S. 792, 802-805 (1973).

(affirming summary judgment despite proof of pretext for lack of evidence of discrimination). As shown in defendants' original brief and in the following sections, plaintiff has not come close to meeting that burden.

B.      Direct Evidence (Pl. Opp. 12-18)

Plaintiff also misunderstands the term "direct evidence." The purported evidence that plaintiff reviews in this section of his brief is not "evidence tending to show, without resort to inference, the existence of a fact in question." Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1184 (2d Cir. 1992). All of it is intended to support an inference that Infinity acted for prohibited reasons, rather than direct evidence of that motivation. In fact, the proffered evidence does not even suffice to create a triable issue of pretext.

1.      James Green (Pl. Opp. 12-13)

At the outset, plaintiff mischaracterizes his own witness's affidavit. Eager to have it serve his race claims as well as his age claims, plaintiff argues that Mr. Green's affidavit demonstrates that Infinity favored "younger white women" over him. Pl. Opp. at 12. In fact, however, Mr. Green testifies that the outside appearances plaintiff sought went to Jenny Munro "and others," Green Aff. ¶5, and both affidavits plaintiff submits from club owners affirm that the "others" include Kid Fresh, who is an African-American male. See, e.g., Forbes Aff. ¶3; Alexandre Aff. ¶3; see also Houston Dep. at 196. Plaintiff's claim that appearances were assigned on a racial basis is belied by his own evidence.[2]

In any case, Mr. Green's affidavit does not advance plaintiff's age discrimination claim either. Even assuming that Infinity did begin excluding the plaintiff from outside appearances after a year – he admits that during his first year of employment he had "[n]o problem," Houston Dep. at 196-97 – there remains no indication in the Green affidavit that the decision was motivated by the plaintiff's age. As noted in defendant's opening brief, the plaintiff was also

---

[2] Indeed, he argued in his own brief that Infinity gave appearances to Kid Fresh instead of to him. Pl. Opp. at 16.

highest paid employee at WZMX, and his exclusion from paid outside appearances might be explained (for example) by a desire to provide additional income opportunities to those paid less. Or – again, assuming it occurred – it might be explained by any number of other reasons ranging from concern about the plaintiff's early morning schedule to personal hostility. Plaintiff's burden here is to provide sufficient evidence that a jury could find that appearances were assigned on the basis of <u>age</u>, however, and not some other motive. In the end, his only evidence on that vital point remains the innocuous if unavoidable fact that the other announcers are younger than he is. But the mere fact of a difference in age is simply not sufficient, and defendants are entitled to summary judgment. <u>Schnabel</u> v. <u>Abramson</u>, 232 F.3d 83, 88 (2d Cir. 2000).

    2.    <u>Ray Lumpkin Affidavit</u> (Pl. Opp. 13)

As explained more fully in Infinity's accompanying motion to strike, Mr. Lumpkin's affidavit fails the most basic requirement of Fed. R. Civ. P. 56(e): that affidavits submitted in support of a summary judgment motion contain evidence that would be admissible at trial. His contention that Infinity discriminated against him has nothing to do with the issues in this case; the inference plaintiff hopes the Court will draw – that Infinity discriminated against Mr. Lumpkin and so must have discriminated against the plaintiff – is improper as a matter of law. <u>See, e.g.</u>, <u>Fisher</u> v. <u>Vassar College</u>, 70 F.3d 1420, 1451 (2d Cir. 1995) (collecting cases); <u>Haskell</u> v. <u>Kaman Corp.</u>, 743 F.2d 113, 121 (2d Cir. 1984); <u>Schrand</u> v. <u>Federal Pacific Elec. Co.</u>, 851 F.2d 152, 156 (6th Cir. 1988) (such evidence is "too abstract, in addition to being irrelevant and prejudicial, to support a finding of . . . discrimination").

Plaintiff also cites Mr. Lumpkin's claim that Infinity only hired the plaintiff in the first place because of alleged pressure from the Urban League, a conclusory assertion that is improper in a summary judgment affidavit. <u>See, e.g.</u>, <u>Hollander</u> v. <u>American Cyanamid Co.</u>, 999 F. Supp. 252, 255 (D. Conn. 1998) (citing <u>U.S.</u> v. <u>Private Sanitation Industry Assn.</u>, 44 F.3d 1082, 1084 (2d Cir.), <u>cert. denied</u>, 516 U.S. 806 (1995)). In any case, the affidavit at best recounts inadmissible hearsay, as it purports to relate communications (unspecified as to date, speakers, or

content) between the Urban League and Infinity. Finally, Mr. Lumpkin apparently lacks any personal knowledge of these matters, or at a minimum fails to show that he is competent to testify on the subject, as Rule 56(e) requires.

       3.    <u>Affidavit of Wendell Houston</u> (Pl. Opp. 13-18)

The plaintiff next turns to his own affidavit and recites a number of events. None of them, individually or together, raises any genuine issue of pretext.

       A.    Poster (Pl. Opp. 13-14)

At the outset, the phrase plaintiff quotes at page 13 of his brief does not appear on any poster; plaintiff apparently manufactures that phrase to assist his argument. The actual poster (McDonald Declaration, Ex. E) does include a hand-written comment by the artist, a Latino rapper, in which the artist describes himself with a racially offensive word. By the plaintiff's own account, the poster was permanently removed within two days of his noticing and removing it. Pl. Opp. at 13-14.

Plaintiff relies on this single incident, along with another involving a keychain he found offensive, in support of a claim of a racially hostile working environment. Pl. Opp. at 8.[3] That approach fails for failure to satisfy either of the two requirements for hostile environment claims. First, the poster and the keychain are insufficient as a matter of law to establish a sufficiently severe and pervasive change in the plaintiff's working conditions. <u>Cf</u>. <u>Richardson</u> v. <u>N.Y. State Dept. of Correctional Servs.</u>, 180 F.3d 426, 441 (2d Cir. 1999) (rejecting hostile environment claim despite fifteen alleged incidents, including three racist statements by co-workers).[4]

---

[3] The keychain was a promotional item distributed by Universal Pictures in marketing its film, "Undercover Brother." Houston Dep. at 250-51. It does not depict a lynching, though Houston testified that he understood it that way. <u>Id</u>. at 252-53. He neither complained about the keychain nor removed it from the control room microphone where he saw it. <u>Id</u>. at 253-54.

[4] <u>See also</u> <u>Carter</u> v. <u>New York</u>, 310 F. Supp. 2d 468, 475 (N.D.N.Y. 2004) ("a plaintiff must demonstrate harassment that consists of more than isolated incidents or casual comments that express harassment or hostility. The incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief.")(citations and internal quotations omitted).

Second, hostile environment claims cannot succeed unless the conduct in question can be imputed to the employer, either because it was committed by a supervisor or because the employer knew of the harassment and did nothing about it or failed to provide a reasonable avenue for complaint. Id. Here, there is no evidence that any supervisor of the plaintiff, or any other member of management, was involved in any way with the poster or the keychain, nor was aware that either item existed or that the poster's handwritten inscription included the epithet. Despite his current indignation, the plaintiff admits that at the time he never complained to anyone, in management or otherwise, about either item.

B.   Nancy Barrow (Pl. Opp. 14-15)

Plaintiff next complains that his white female co-host, Nancy Barrow, was allowed to be insubordinate and rude to him, despite his complaints, and to station management. The argument does not assist his claim first because the two were not similarly situated. The plaintiff himself argues strenuously that he was senior to Ms. Barrow, "paid substantially more," and with "duties [that] substantially exceed[ed]" hers. Pl. Opp. at 14. "The positions are not co-equal and no one would ever think so." Id. Accepting that position as true, then, plaintiff and Ms. Barrow were not "similarly situated in all material respects." Shumway v. UPS, Inc., 118 F.3d 60, 64 (2d Cir. 1997).[5] If, as plaintiff contends, Infinity held its more highly-placed employee to a higher standard of behavior than his lower-ranking co-host, there is nothing suggestive of pretext in that.

Further, plaintiff never answers defendants' argument in the opening brief: even assuming for these purposes that management did consistently take Ms. Barrow's side in the arguments she had with the plaintiff, there is no evidence that they did so because of the plaintiff's race or age as opposed to any of a litany of other, legitimate reasons, including their honest belief that plaintiff was consistently in the wrong, or Ms. Barrow's longer tenure at the

---

[5] They also are not similarly situated in that Ms. Barrow had worked with Infinity's Hartford managers for many years, while the plaintiff was a relative newcomer.

BNLIB1 2719v1

station. Plaintiff's burden is not just to show that management acted irrationally against him, but that they did so for illegal reasons. Of that he has no evidence. Asked that question in deposition -- "What is it that makes race part of the equation?" – he could say only "Because I'm black and she is white." Houston Dep. at 191. That is all the plaintiff has, and it is not nearly adequate to reach a jury.

      C.  Pay Differentials (Pl. Opp. at 15)

Plaintiff next complains that he was paid less than the hosts of morning shows at other stations, but makes no effort to respond to the explanation of those differences in defendants' opening brief. There is no question that he was paid less than the hosts at WTIC-FM and WTIC-AM – and more than the individual who was both host and program director at WRCH. See Pl. Opp. at 15. The question is why. On that point the plaintiff again falls back to "I'm black and they are white." He makes no effort to counter the explanation for those pay differences in defendants' opening brief, see pp. 15-16, or in the evidence, see McDonald Decl. ¶¶7, 8, 11.

      D.  Appearances (Pl. Opp. at 16)

The next section of plaintiff's opposition brief largely repeats the arguments made in connection with the Green affidavit, addressed above. In short, even assuming that Infinity denied the plaintiff opportunities for outside appearances, there is no evidence in this record that it did so because of his race or age.

      E.  Weekend Guests, Interviews, Daily Power for Living, Training (Pl. Opp. at 16-18)

The final four complaints in this section of plaintiff's brief suffer from a common problem, which they share with all of plaintiff's other allegations: there is no evidence that these slights, if they occurred at all, occurred because of the plaintiff's race or age. That failure of proof is fatal to plaintiff's claims, because Title VII "does not make [defendants] liable for doing stupid or even wicked things; it makes them liable for *discriminating*." Norton v. Sam's Club, 145 F.3d 114, 120 (2d Cir. 1998) (original emphasis). Absent sufficient evidence to permit a jury to connect these miscellaneous claims with a prohibited motivation, a trial of this case

BNLIB1 2719v1

would degenerate into a referendum on whether Infinity treated the plaintiff well. "Neither the Court, nor a jury, sits as a 'super-personnel department' to reexamine an entity's decisions on the usefulness to the enterprise of an at-will employee." Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986), cert. denied, 479 U.S. 1066 (1987)).

It simply is not sufficient merely to show a difference in treatment and then point out that those who received better treatment are white -- or female, or younger, or different than the plaintiff in some other protected characteristic. Here, as in Lizardo v. Denny's, Inc., 270 F.3d 94, 104 (2d Cir. 2001), "plaintiffs have done little more than cite to their mistreatment and ask the court to conclude that it must have been related to their race. This is not sufficient." It is no more sufficient here, and defendants are entitled to summary judgment.

  B. Evidence of Pretext (Pl. Opp. at 19-28)

The second half of plaintiff's brief attempts to address some of the arguments in defendants' opening brief. These responses do not establish any genuine issue of fact for trial.

    1. Same-Actor Inference (Pl. Opp. 19-20)

Defendants have pointed out that where the same individuals both hire and fire the plaintiff within a span of a few years, those facts "strongly suggest that invidious discrimination was unlikely" and create an inference against discrimination that is "highly relevant" in evaluating the plaintiff's case. Grady v. Affiliated Central, Inc., 130 F.3d 553, 560 (2d Cir. 1997); Schnabel, 232 F.3d at 91. Plaintiff cites no case law in response; instead, he argues that defendants were bigoted all along, even in hiring him and paying him significantly more than he had ever earned in his career.

The chief fault with that argument is that there is not a shred of admissible evidence to support it. There is no competent evidence before the Court that Infinity had a history of "exclusionary employment practices," or that it was "under intense pressure to recruit African-Americans" or "threat of legal action," or that it was "losing a significant part of its listening

audience as a result." Pl. Opp. at 19. There is no witness before the Court with demonstrable personal knowledge of any part of that story.

Nor, for that matter, does the story make any logical sense. If Infinity truly was laboring under these impressive-sounding pressures to diversify its work force – a claim that, incidentally, is flatly inconsistent with plaintiff's later argument that African-American employees were concentrated at WZMX, see Pl. Opp. at 26 – then it makes no sense that the same managers would shortly thereafter cast this rationale to the winds and send the plaintiff packing. That is exactly the sort of implausibility that the same-actor inference recognizes and rejects.

        2.     Alleged Systematic Mistreatment of African-Americans (Pl. Opp. at 20)

Plaintiff here repeats, again, his reliance on the single poster and keychain issues discussed at greater length above. Everything else in his litany of complaints was directed at him and him alone, apparently, not at either of the two other African-American announcers at WZMX. There is no evidence that either of the other two announcers noticed the handwriting on the poster, or drew any negative inference from a major motion picture company's promotional keychain. As explained above, these issues do not suffice to create any genuine issue of fact.

        3.     Similarly Situated Individuals (Pl. Opp. 20-25)

Most of the arguments in this section have been addressed above, including the discussion of pay differentials and outside appearances. The one new argument – new not only to the brief, but to this action – is that Infinity retaliated against the plaintiff for filing this action by deciding not to renew his contract after he filed the Complaint. Pl. Opp. at 23-24. But the very case on which plaintiff relies holds that a mere closeness in time between protected conduct and adverse employment consequences is not enough to survive summary judgment; plaintiff must also present sufficient evidence for a jury to find that he would have kept his job but for the filing of this lawsuit. Manoharan v. Columbia Univ. of Phys. & Surgeons, 842 F.2d 590, 594-95 (2d Cir. 1988). He has no such evidence; his retaliation claim relies exclusively on the coincidence of timing. With no proof of pretext, plaintiff cannot avoid summary judgment.

4.  Purported Statistical Evidence (Pl. Opp. 25-27)

Plaintiff's final argument is an adjective-laden diatribe completely unconnected to any admissible evidence. As explained above and in defendants' opening brief at 22-23, plaintiff's efforts to create a statistical case fail as a matter of law and of common sense. Plaintiff simply ignores the case law Infinity cites, and does not respond to the illogic of his own position: even if, as he contends, Infinity was determined to cabin African-American employees at WZMX and exclude them from other stations, that still does not assist him, because it does not support a logical inference that Infinity terminated his employment at WZMX on grounds of race.

## CONCLUSION

For all of these reasons, defendants' motion for summary judgment should be granted.

Respectfully submitted,

INFINITY RADIO LICENSE, INC.,
d/b/a WZMX/FM HOT 93.7;
VIACOM, INC.; INFINITY
BROADCASTING CORP.;
INFINITY RADIO, INC.;
INFINITY MEDIA CORP.; CBS
RADIO, INC.,

By their attorneys,

_____
Mark W. Batten [ct24751]
PROSKAUER ROSE LLP
One International Place, 14th Floor
Boston, MA 02110
(617) 526-9850
mbatten@proskauer.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record by first-class mail, postage prepaid, this 6th day of July, 2004.

_____
Mark W. Batten

BNLIB1 2719v1