UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WENDELL "JD" HOUSTON | : | CIVIL ACTION NO: 3:03CV0130(AWT) |
| | : | |
| V. | : | |
| | : | |
| INFINITY RADIO LICENSE INC. | : | |
| d/b/a WZMX HOT 93.7, VIACOM, INC. | : | |
| INFINITY BROADCASTING CORP., | : | |
| INFINITY RADION, INC., INFINITY | : | |
| MEDIA CORPORATION AND CBS | : | |
| RADIO, INC. | : | DECEMBER 12, 2006 |

**PLAINTIFF**'S PROPOSED JURY INSTRUCTIONS**

**Proposed Instruction No. 1- Race and Sex Discrimination Claims Under Title VII Of The Civil Rights Act of 1964**

The plaintiff has also brought his claim under Title VII of the Civil Rights Act. Title VII protect against discrimination with respect to the "terms" and "conditions" of employment. 42 U.S.C. § 2000e-2(a)(1). Under Title VII of the Civil Rights Act of 1964, "[i]t shall be an unlawful employment practice for an employer...

1. to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual*'s race, color, or sex,...

2. to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual*'s race, color, ..or sex" 42 U.S.C. § 2000e-2.

This federal law means that an employer cannot discriminate on the basis of race or

sex against the plaintiff in terms and conditions of employment, which includes any denial of compensation, benefits, disciplinary actions, and termination of employment. An employer may not intentionally deny a promotion to the plaintiff because he is black, or a male or prefer a white or female employee without regard to qualifications, because of race and sex.

## Authorities

Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253-54 (1981).

St. Mary*s Honor Center v. Hicks, 509 U.S. 502, 505-512 (1993).

Furnco Construction Corp v. Waters, 438 U.S. 567, 577 (1978).

Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994).

De la Cruz v. New York City Human Resources Admin., 82 F.3d 16, 20 (2d Cir. 1996)(quoting Powell v. Syracuse University, 580 F.2d 1150, 1155 (2d Cir.) cert denied, 439 U.S. 984 (1978)(alteration in original).

Owens v. New York City Housing Authority, 934 F.2d 405, 409 (2d Cir.), cert. denied, 502 U.S. 964 (1991).

Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219, 1224 (2d Cir. 1994);

Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 465 (2nd Cir. 1989)

**Proposed Instruction No. 2- Terms of Employment Claim.**

Plaintiff claims that the Defendants violated the provisions of Title VII of the Civil Rights Act of 1964 by intentionally discriminating against plaintiff on the basis of race and sex, namely, through denying Plaintiff equal compensation, benefits and appearances, to the benefit of others who were white and/or female.

It is the plaintiff's burden to persuade you by a preponderance of the evidence that the compensation and benefits were denied because of race or sex. Cabrera v. Jakabovitz, 24 F.3d 372, 382 (2d Cir. 1994). At all times, the plaintiff bears the ultimate burden of proving that discrimination (here, race or sex) was a determinative factor in the adverse employment decision. See generally St. Mary*s Honor Ctr. v. Hicks, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). The dispositive fact that you must decide is whether Plaintiff has proven by a preponderance of the evidence that race or sex was a determining factor in the Defendants' decisions on these matters. Plaintiff need not prove that race or sex was the sole or exclusive reason for the decision, merely that it was a substantial motivating one..

Plaintiff is not required to produce direct evidence of intentional discrimination. Intent ordinarily cannot be proven directly, because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer a person*s intent from surrounding circumstances. You may consider any statement made or act done or omitted by a party whose intent is at issue, and all other facts and circumstances which indicate his state of mind.

Here, Plaintiff must establish by a preponderance of the evidence that he is a black male, that he sought and was denied equal compensation and treatment, and that after his requests were rejected, defendants continued to discriminate in favor or white persons or females. Patterson v. Maclean Credit Union, 109 S.Ct. 2363(1989).

You are entitled to infer, but need not, that the plaintiff has met his ultimate burden of demonstrating intentional discrimination by a preponderance of the evidence if you find that plaintiff is a black male, that he was subjected to unequal treatment with respect to the terms of his emplloyment. and you disbelieve the Defendants' explanation for their actions. Cabrera v. Jakabovitz, 24 F.3d 372, 382 (2d Cir.1994); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

In other words, if you find that the employer's explanation was a pretext, that is, a mere excuse, a ruse or cover-up for the real reasons for the discriminatory treatment, the plaintiff's race or gender, then you are permitted, albeit not mandated, to return a verdict in the plaintiffs favor. *See* Hicks 509 U.S. at 511. A reason is pretextual within the meaning of this case, if race or sex, and not the given reason, was a motivating factor for the employment actions. Plaintiff need not, however, establish that race or sex was the sole motivating factor for the employment actions.

There are certainly other ways in which plaintiff could seek to prove that defendant's reasons were pretextual. Thus, for example, plaintiff could seek to persuade you that defendant had not offered the true reason for its decision by presenting evidence of respondent's past treatment of plaintiff or others similarly situated, including the instances of the racial harassment which he alleges, defendant's alleged retaliatory actions, statements or other actions by the employer which reveal hostility towards black or male employees. You may consider evidence of the timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. You may also consider evidence that similarly situated white or female employees received systematically better treatment. In other words the defendant did not afford the same treatment to similarly situated persons who were not members of the plaintiffs protected class.

McDonnell Douglas Corp. v Green (1973) 411 US 792, 36 L Ed 2d 668, 93 S Ct 1817, Texas Dep't of Community Affairs v Burdine (1981) 450 US 248, 67 L Ed 2d 207, 101 S Ct 1089.

You may consider evidence that similarly situated employees or applicants, who are not members of a plaintiffs protected group, were treated more favorably under comparable circumstances, McDonald v Santa Fe Trail Transp. Co. (1976) 427 US 273, 49 L Ed 2d 493, 96 S Ct 2574. You may also consider evidence that the employer deviated from its established rules or procedures in dealing with the plaintiff. Brown v A. J. Gerrard Mfg. Co. 643 F2d 273, (5th Cir.1981); Lindsey v Angelica Corp. 508 F Supp 363, (E.D.Mo.1981).

A discriminatory intent can be inferred from the mere fact of differences in treatment of blacks and whites or men and women in similar circumstances. It is for you to decide what facts have been established by the evidence.

If you find that the defendant intentionally discriminated against the plaintiff because of his race and sex, then you must find for the plaintiff and award economic and non-economic damages.

## Authorities

Furnco Construction Corp v. Waters, 438 U.S. 567, 577 (1978).

Texas Dep't of Community Affairs v Burdine 450 US 248, (1981).

**Proposed Instruction No. 3- Racially Hostile Work Environment and Harassment**.

In order to prevail on his hostile work environment racial harassment claim under the Title VII, Plaintiff has to show that (1) he belonged to the protected groups at issue; (2) he was subjected to unwelcome racial harassment; (3) the harassment was based upon race; (4) the harassment affected the conditions of his employment; (5) the defendant acted with discriminatory purpose or intent.

The plaintiff must show that the harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment. See Harris v. Forklift Sys.(1993) 510 US 17, 126 L Ed2d 295, 114 S Ct 367, on remand, remanded (CA6) 14 F3d 601.; Edwards v. Wallace Community College, 49 F.3d 1517, 1521 (11th Cir.1995); Cross, 49 F.3d at 1507.

To determine if a hostile work environment exists, you must assess the working environment from the standpoint of 'a reasonable African-American or man.*Plaintiff's diminished performance resulting from the employer's discriminatory behavior, such as the creation or condonation of a racially hostile work environment, cannot be a legitimate reason for adverse treatment. Broderick v Ruder (1988, DC Dist Col) 685 F. Supp 1269.

Discriminatory behavior that is so pervasive and severe that it creates a hostile or abusive working environment violates Title VII. Meritor Sav. Bank, FSB v Vinson (1986) 477 US 57, 91 L Ed 2d 49, 106 S Ct 2399, 40 BNA FEP Cas 1822, 40 CCH EPD ¶36159, on remand, remanded (App DC) 255 US App DC 397, 801 F2d 1436. Such conduct is unlawful when it is motivated by any of the bases of discrimination covered by Title VII. Whether a working environment is sufficiently hostile or abusive must be determined by both an objective standard, as viewed by a

reasonable person, as well as a subjective standard, taking the victim*s perception into account. In determining whether harassment is serious enough to create a hostile work environment, the employer*s conduct, as a whole, is evaluated in the context of all the relevant circumstances. <u>Haehn v Hoisington</u> 702 F Supp 1526, (DC Kan. 1988).

These circumstances may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and, whether it unreasonably interferes with an employee*s work performance. <u>Paape v Wall Data</u> 934 F Supp 969 (ND Il1,1996).

**Proposed Instruction No. 4- Termination Claim.**

I will now instruct you concerning the plaintiff's claim that the defendant terminated him employment or otherwise discriminate against him with respect to compensation, tenure, conditions or privileges of employment because of her race and gender. Under Title VII of the Civil Rights Act of 1964 an employer cannot discriminate against the plaintiff in his terms and conditions of employment on the basis of race and sex.

Title VII requires that the plaintiff prove that the defendants intentionally discriminated against her. However, plaintiff is not required to produce direct evidence of intentional discrimination.

Intentional discrimination may be inferred from other facts. You may therefore consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of his acts knowingly done or knowingly omitted. A discriminatory intent can be inferred from the mere fact of differences in treatment of blacks and whites in similar circumstances. It is for you to decide what facts have been established by the evidence.

Thus if you find that the African-American male plaintiff was terminated by the defendants under circumstances in which a white or female employee was not, you may draw an inference of race and sex discrimination.

In order to demonstrate that defendant unlawfully discriminated against him on the basis of race and sex, plaintiff is not required to present only evidence of a particular type. Patterson v. Maclean Credit Union, 109 S.Ct. 2363(1989). Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253-54(1981), and further described in St. Mary*s Honor Center v. Hicks, 509 U.S. 502, 505-512 (1993).

You may infer discrimination if you find that the employer*s explanation of its reasons for

plaintiff's termination is unworthy of credence. Cabrera v. Jakabovitz, 24 F.3d 372, 385 (2d Cir.), cert. denied, U.S. 115 S.Ct. 205 (1994). See also. Binder v. Long Island Lighting Co., 57 F.3d 193, 200 (2d Cir. 1995) E.E.O.C. v. Ethan Allen. Inc., 44 F.3d 116, 120 (2d Cir. 1994). Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 142 (2d Cir. 1993). In other words, you may consider the defendant*s proffer of a false reason for its employment action sufficient basis for finding that such action was motivated by an improper discriminatory intent. DeMarco v. Holy Cross High School, 4 F.3d 166, 170 (2d Cir. 1993).

You may consider different kinds and combinations of evidence in this regard. One evidence can be interpreted as an acknowledgment of discriminatory intent by the defendants or their agents, as in Mojica v. Gannett Co., 7 F.3d 552, 561, (7th Cir. 1993) **(en banc).** You may also consider circumstantial evidence as a basis for drawing an inference of intentional discrimination. Thus plaintiff must present proof that his discharge occurred in circumstances giving rise to an inference of discrimination on the basis of race and sex. Woroski v. Nashua Corp., 31 F.3d 105, 108 (2d Cir.1994). You may consider suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. Ostrowski v. Atlantic Mut. Ins. Cos., 968 F.2d 171, 182 (2d Cir.1992). The circumstances that give rise to an inference of discriminatory motive include actions or remarks made by decision-makers that could be viewed as reflecting a discriminatory animus. But you may infer a person*s intent from surrounding circumstances. You may consider any statement made or act done or omitted by a party whose intent is at issue, and all other facts and circumstances which indicate his state of mind.

You may therefore consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of his acts knowingly done or knowingly omitted.

Intentional discrimination may be inferred from other facts. A discriminatory intent can be inferred from the mere fact of differences in treatment of blacks and whites or males and females in similar circumstances. It is for you to decide what facts have been established by the evidence.

Thus if you find that the African-American male plaintiff was denied promotion, disciplined, and subjected to disparate treatment and terminated by the defendants under circumstances in which a white employee was not, you may draw an inference of racial discrimination. You may also consider evidence that a plaintiff was replaced by a person outside the protected class and you may draw an inference of gender and race discrimination therefrom.

### Authorities

Texas Dep't of Community Affairs v Burdine (1981) 450 US 248, 67 L Ed 2d 207, 101 S Ct 1089,

Furnco Constr. Corp. v Waters (1978) 438 US 567, 57 L Ed 2d 957, 98 S Ct 2943.

Vitug v Multistate Tax Comm'n (1996, CA7) 88 F3d 506.

**Proposed Jury Instruction No. 5 Retaliation Claims**

Title VII prohibits discrimination against employees who oppose unlawful employment practices or participate in any charge or investigation under the Act. 42 U.S.C. § 2000e-3(a). An actual violation of Title VII by the employer is not a prerequisite for a retaliation claim; the employee need only have a sincere and reasonable belief that she is challenging conduct that violates Title VII. Holland v. Jefferson Nat'l Life Ins. Co., 883 F.2d 1307, 1314 (7th Cir.1989).

The plaintiff must prove by a preponderance of the evidence the following elements regarding her retaliation or reprisal for engaging in protected activities: 1) Plaintiff engaged in a protected activity; 2) plaintiff's activity was known to defendant; 3) defendant took adverse action against plaintiff; 4) a causal connection exists between plaintiff's engaging in the protected activity and the adverse action. Wrenn v. Gould, 808 F.2d 493, 500-501 (6th Cir. 1987).

Where an employee's diminished work performance is caused by the employer's discrimination or retaliatory action, the employer cannot in turn rely on it as a non-discriminatory reason for adverse action. Ardrey v. United Parcel Services, 615 F. Supp. 1250, 1298 (W.D. N.C. 1985), affirmed on other grounds, 798 F.2d 679, (4th Cir. 1986), cert. denied, 107 S.Ct. 1575 (1987). The attempt to build up documentation to justify a dismissal after an employee has filed a complaint or protested against the employer is direct evidence of an impermissible retaliatory motive. Moffett v. Gene B. Glick. Inc., 621 F. Supp. 244, 282 (D.C. Ind. 1985). An employer or supervisor may be held liable for discrimination or retaliation where he acquiesces in or condones unlawful acts by his subordinates. Howard v. National Cash Register Co., 388 F. Supp. 603 (S.D. Oh. 1975); Bell v. St. Regis Paper Co., 425 F. Supp. 1126 (N.D. Oh. 1976); Robsen v. Eva's Super Market, Inc., 538 F.Supp. 857, 861-62 (N.D. Oh. 1982).

Plaintiff claims that he engaged in protected activities with respect to his own employment

situation in that he protested racially based actions on his own behalf at important stages with regard to his own circumstances and those of other employees. He claims that these activities were well-known to defendants' agents who took adverse action against him. It is up to you to determine whether a causal connection existed between plaintiff's engaging in such protected activities and the adverse decisions to impose the adverse conditions of employment and termination.

To establish a causal link, the plaintiff only has to establish "that the protected activity and the adverse action were not wholly unrelated." Simmons v. Camden County Bd. of Educ., 757 F.2d 1187, 1189 (11th Cir.1985), quoted in Holland, 883 F.2d at 1315 n. 4.  Once again, suspicious timing does constitute circumstantial, or indirect, evidence to support a claim of discrimination.

It is not necessary for Plaintiff to prove that a retaliatory motive was the sole motivation of, or even a primary motivation for, the defendant's decision to discipline or to terminate him. The plaintiff need only prove that it played a part in the decision even though other factors may have motivated the defendant. Once Plaintiff shows that a retaliatory motive was a motivating factor in the defendant's decision, it is the defendant's burden to articulate a legitimate, nonretaliatory reason for its decision to terminate him.  If the defendant does so, Plaintiff must prove by a preponderance of the evidence that the proffered legitimate reason is in fact a pretext and that retaliation was a motivating factor in the defendant's decision. Plaintiff retains the ultimate burden of persuading you by a preponderance of the evidence that he was retaliated against as he claims. Plaintiff claims that the defendant's reasons for terminating him are not the true reasons why he was terminated, that such reasons are unworthy of belief, and that the true reason for his termination was that he opposed an employment practice or practices he reasonably believed to have been sexually and racially discriminatory. When you consider Plaintiff's evidence that the reason advanced by the defendant is a pretext, keep in mind that the relevant question is whether or not the defendant's reason was the

real reason for its actions   However, you may consider whether the defendant's reason is merely a cover-up for unlawful retaliation. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), <u>Texas Dep't of Community</u> <u>Affairs v. Burdine</u>, 450 U.S. 248 (1981).

      At all times, however, the plaintiff retains the ultimate burden to show that he has been the victim of intentional discrimination. See <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 507 (1993) (quoting Burdinne, 450 U.S. at 253).

**Proposed Jury Instruction No. 6 (Section 1981 Claim)**

The laws under which the plaintiff is suing are called the Civil Rights Acts of 1865 which are found in Volume 42 of the United States Code, Sections 1981. The Civil Rights Act of 1865 provides that "all persons [regardless of race] shall have the same right in every State and Territory to make and enforce contracts.... and makes it unlawful for an employer to refuse to deny promotion to any individual or otherwise discriminate any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual*s race.

This federal law means that an employer cannot discriminate on the basis of race against the plaintiff in his terms and conditions of employment, and his protest at what he perceived to be discriminatory denial of equal terms and conditions of employment and the supervisors* creating and condoning harassing and intimidating work environment for him or other employees.

It is unlawful for an employer to intentionally refuse to hire, or intentionally retaliate against any person, or otherwise discriminate against any person with respect to compensation, tenure, conditions or privileges of employment because of such person*s race. The plaintiff in this case claims that the defendants intentionally discriminated against him based upon his race and retaliated against him on the basis of his participation in protected activities. The defendants deny this charge. It is your responsibility to decide whether the plaintiff has proven his claim against the defendants by a preponderance of the evidence.

Section 1981 requires that the plaintiff prove that the defendants intentionally discriminated and retaliated against him. However, plaintiff is not required to produce direct evidence of intentional discrimination. Intentional discrimination may be inferred from other facts. You may therefore consider it reasonable to draw the inference and find that a person intends the natural and

probable consequences of his acts knowingly done or knowingly omitted. A discriminatory intent can be inferred from the mere fact of differences in treatment of blacks and whites in similar circumstances. It is for you to decide what facts have been established by the evidence.

Thus if you find that the African-American female plaintiff was terminated by the defendants under circumstances in which a white or male employee was not, you may draw an inference of race discrimination.

**Proposed Jury Instruction No.9 -DAMAGES INSTRUCTIONS**

If you find the defendant is liable to the plaintiff under any or all of the foregoing theories, then you must also determine an amount that is fair compensation for all of the injuries, if any, that she suffered because of the discrimination. The purpose of damages is to make the plaintiff whole—that is, to compensate the plaintiff for the damage that the plaintiff has suffered. Under Title VII and Sections 1981 and 1983 damages include (1) lost salary and benefits and (2) compensatory damages for intangible losses. Intangible losses may include, but are not limited to, emotional pain, suffering, inconvenience, mental anguish, humiliation, shame, loss of self-esteem, fear, embarrassment, depression, and injury to reputation or professional standing which plaintiff has suffered or may suffer in future.

You may award damages only for injuries that the Plaintiff proves were caused by the Defendants* allegedly discriminatory conduct. The damages that you award must be fair compensation for all of Plaintiff's damages, no more and no less. You should not award damages for speculative injuries, but only for those injuries which Plaintiff has actually suffered or is reasonably likely to suffer in the future.

You must use sound discretion in fixing an award of damages, drawing reasonable inferences where you find them appropriate from the facts and circumstances in evidence. You should consider the following elements of damage, to the extent you find them proved by a preponderance of the evidence:

One element of the damages that you must consider is backpay and benefits. That is, as part of a damage recovery, you must award Plaintiff an amount equal to the pay and benefits that he would have received from the Defendants had he not been discharged, from the time that he was

discharged until the date of trial, unless you find that Plaintiff became unable to perform the essential functions of the position of Morning Show Host with or without reasonable accommodation at some point following his discharge and prior to the date of trial. If you so find, then you should calculate back pay and benefits from the date of discharge up to the present.

Plaintiff is not required to prove with unrealistic precision the amount of lost earnings, if any, due to him. Any ambiguities in determining what he would have earned should be resolved against the Defendants. If Defendants prove that Plaintiff unjustifiably failed to take a new job of like kind, status and pay which was available to him, or failed to make reasonable efforts to find a new job, you should subtract from his damages any amount he could have earned in a new job after his discharge. If Defendants are found liable, Plaintiff is entitled to compensatory damages that he has suffered as a direct result of Defendants* conduct. No evidence of the monetary value of intangible things, such as mental pain and suffering, has been or need be introduced. You are not trying to determine value, but an amount that will fairly compensate Mr. Houston for the damages he has suffered. There is no exact standard for fixing the compensation to be awarded for these elements of damage. Any award that you make should be fair in light of the evidence.

If you find that Mr. Houston is entitled to compensatory damages for intangible losses, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require that the Plaintiff proves the amount of his losses with mathematical precision, but only with as much definiteness and accuracy as the circumstances permit.

If you find that the Defendants are liable for the Plaintiff*s injuries, you must award Plaintiff the compensatory damages that he has proven. You also may award punitive damages if the Plaintiff

has proven that the Defendants acted with malice or with willfulness or with callous and reckless indifference to the safety or rights of others. One acts willfully or with reckless indifference to the rights of others when he acts in disregard of a high and excessive degree of danger about which he knows or which would be apparent to a reasonable person in his condition.

If you determine that the Defendants* conduct was so shocking and offensive as to justify an award of punitive damages, you may exercise your discretion to award those damages. In making any award of punitive damages, you should consider that the purpose of punitive damages is to punish a defendant for shocking conduct, and to deter the Defendants and others from engaging in similar conduct in the future. The law does not require you to award punitive damages; however, if you decide to award punitive damages, you must use sound reason in setting the amount of the damages. The amount of an award of punitive damages must not reflect bias, prejudice, or sympathy toward any party. However, the amount can be as large as you believe necessary to fulfill the purposes of punitive damages. You may consider the financial resources of the defendant in fixing the amount of punitive damages and you may impose punitive damages against one or more of the Defendants, and not others, or against more than one Defendant in different amounts.

You may consider the following potential items of damage in reaching your determination:

    1. Injury to reputation and standing in the community; and

    2. Shame, humiliation, and mental suffering; and

    3. Out-of-pocket loss, including lost income, medical expenses, and lost earning capacity in the future.

If you consider the issue of future damages, the plaintiff is entitled to the reasonable value of any loss of future earning power necessarily caused by the statement. In determining this amount,

you may consider what the plaintiff's earning power was before the statement, what it would have been at the present time had the statement in question not taken place, and what it is now.

A damaged plaintiff should not be deprived of compensation merely because he cannot prove the exact dollar value of the damages suffered.

Damages for injury to reputation and standing in the community, as well as for shame, humiliation, and mental suffering, if any, are compensatory damages. The law fixed no precise standard for computing such damages, but leaves it to the jury's sound discretion to fix the appropriate amount.

The measure of any future damage is the present loss in dollars which the plaintiff with reasonable certainty will sustain in the future, which is capable of measurement by the present value of money.

The plaintiff is entitled, should you find that the evidence warrants, to recover damages for any mental anguish, depression, humiliation, embarrassment or emotional distress or any other kind he has suffered as a direct result of defendant's wrongful acts.

In determining the amount to be awarded in this regard, if you think it is justified, you may take into account, the plaintiffs past and present suffering and any future suffering he will experience as a direct result of defendant's wrongful acts. You may take into account the plaintiff's emotional distress she was already suffering. You may take into account the duration of time which plaintiff suffered emotional distress in calculating the amount of money damages. But you may only take these factors into consideration if the plaintiff has proved them by a preponderance of the evidence.

PLAINTIFF

By_____
   Francis A. Miniter
   Miniter & Associates
   100 Wells Street, Suite 1D
   Hartford, CT 06103
   Tel: 860-560-2590
   Fed Bar No: ct09566