UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WENDELL "J.D." HOUSTON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>INFINITY RADIO LICENSE, INC., d/b/a )<br>WZMX-FM; VIACOM, INC.; INFINITY )<br>BROADCASTING CORP.; INFINITY RADIO, )<br>INC.; INFINITY MEDIA CORP.; and CBS )<br>RADIO, INC., )<br>)<br>Defendants. )<br>) | C.A. No. 3:03-cv-00130-AWT<br><br>January 3, 2008 |

## DEFENDANTS' MOTION IN LIMINE TO EXCLUDE CERTAIN INADMISSIBLE TESTIMONY FROM PLAINTIFF'S WITNESSES

The plaintiff in this employment discrimination action, Wendell "J.D." Houston, intends to call at least three witnesses (in addition to himself) to testify, at least in part, about events entirely outside the scope of their personal knowledge and to offer inadmissible lay opinions to the jury. Portions of each of these witnesses' proposed testimony has already been the subject of a motion before this Court to strike portions of affidavits offered by plaintiff in opposition to summary judgment (docket no. 64), which was granted in part on September 14, 2006 (docket no. 74). In addition to the objectionable affidavits, the plaintiff now lists these same affiants, among others, as his intended witnesses at trial, presumably to offer the same objectionable testimony covered by their affidavits. Defendants, Infinity Radio License, Inc., d/b/a WZMX-FM, et al. ("Infinity"), therefore respectfully seek to limit the testimony of these witnesses and to carry forward the spirit and effect of the Court's September 2006 ruling as set forth below.

**1. Testimony of plaintiff, J.D. Houston**

If his affidavit and briefing submitted in opposition to summary judgment are any indication, plaintiff J.D. Houston intends to take the stand and offer a litany of conclusory allegations and impassioned rhetoric about the defendants' actions and motivations in this matter, many of which lack any basis in fact or evidentiary support whatsoever. Mr. Houston's unsubstantiated beliefs about these matters, however, are not admissible and he must be barred from offering them in his testimony at trial.

As this Court recognized in striking substantial portions of the plaintiff's affidavit (via the September 14, 2006 Order), much of what Mr. Houston seeks to testify about is simply not borne out by the factual record, and is not supported by any form of admissible evidence. He must not be permitted to take the stand and convert his unsupported assertions and inflammatory rhetoric into testimony where he possesses neither the personal knowledge nor the expert qualifications to render such testimony admissible under the rules of evidence. Infinity respectfully requests that Mr. Houston be proscribed from offering testimony in the following areas:

    a. Mr. Houston repeatedly alleges, without any factual support, that Infinity had an "abysmal record" of hiring minority employees at its Hartford stations before he arrived and further contends that they only hired him "under threat of legal action" and extreme pressure from community groups, in order to "appease critics." None of these claims, however, are backed by a single document or any testimony in the record. These matters are plainly outside Mr. Houston's personal knowledge and he should be proscribed from testifying about them at trial. See

Ani v. IMI Sys., 2002 U.S. Dist. LEXIS 15196 (D.N.Y. 2002) (holding that plaintiff's testimony about co-workers' favorable treatment was not admissible "because he gives us no basis to infer that he had personal knowledge of the fact upon which to base his testimony").

b. Based on Mr. Houston prior submissions to the Court, his testimony is also likely to include a variety of "legal" conclusions about the ultimate issues of the case, such as that the Defendants have: "retaliated" against him, "fostered and tolerated a hostile work environment", acted against him "without due process", and treated him differently than "similarly situated" employees. Plaintiff may also attempt to testify as to his opinion that "age was a motivating factor" in the defendants' actions and that defendants' explanations to the contrary are "nothing more than a pretext", as he did in his affidavit. Such statements amount to nothing more than conclusory allegations and parroting of legal buzzwords from the complaint, however, and the plaintiff must not be permitted to cloak such lay opinions (prohibited by FRE 701) and conclusions about the ultimate issues of the case, in the guise of admissible testimony. Where the plaintiff does not have personal knowledge of the defendants' motivations or goals in taking a given action, he must not be permitted to opine about the ultimate legal significance of that action, and offer his own take on defendants' motivations. See Hester v. BIC Corp., 225 F.3d 178, 185 (2d Cir. 2000) ("in an employment discrimination action, Rule 701(b) bars lay opinion testimony that amounts to a naked speculation concerning the motivation for a defendant's adverse employment decision. Witnesses are free to testify fully as to their own observations of the defendant's interactions with the

3

plaintiff or with other employees, but 'the witness's opinion as to the defendant's [ultimate motivations] will often not be helpful within the meaning of Rule 701 because the jury will be in as good a position as the witness to draw the inference as to whether or not the defendant' was motivated by an impermissible animus.") (internal citations omitted).

**2. Testimony of Raymond E. Lumpkin II**

Defendants understand that plaintiff intends to call Mr. Lumpkin to testify, among other things, about his belief that the Urban League applied pressure to Infinity in order to get them to hire more African American on-air talent. Mr. Lumpkin is not in a position to offer such testimony, however, as he has no personal knowledge of any communications between Defendants and the Urban League. And, in any event, such testimony would amount to inadmissible hearsay as Mr. Lumpkin was not a party to such discussions.

Mr. Lumpkin is also expected to testify about his own unsuccessful attempts to obtain employment with Infinity, but this testimony too must be barred as both irrelevant and inadmissible. Infinity's alleged decision not to hire Mr. Lumpkin is not at issue in this case and his experiences in this regard are wholly irrelevant. Further, if his previously submitted affidavit is any indication, Mr. Lumpkin cannot even provide specifics as to who was involved in the hiring decision he challenges, who allegedly told him he was not qualified, and who it was that ultimately got the position he claims to have applied for.

Even if Mr. Lumpkin's expected testimony regarding racial motivation in his being denied a position at Infinity could be minimally substantiated – which it cannot – such testimony is nonetheless inadmissible in this action because it is irrelevant. Mr. Lumpkin is

4

not the plaintiff in this action and his expected testimony as described above falls far short of the requirements for evidence of "pattern or practice" discrimination; the only other purpose for which it could be offered here. Even setting aside the demonstrated lack of detail in Mr. Lumpkin's allegations of discriminatory treatment, such evidence is only admissible where there is a sufficient sample of employees to provide statistically significant data. See, e.g., Fisher v. Vassar College, 70 F.3d 1420, 1451 (2d Cir. 1995) (evidence from eight employees out of 100 was not statistically significant and was therefore inadmissible) (collecting cases); Haskell v. Kaman Corp., 743 F.2d 113, 121 (2d Cir. 1984). The testimony expected from Mr. Lumpkin in this regard is "too abstract, in addition to being irrelevant and prejudicial, to support a finding of…discrimination." Schrand v. Federal Pacific Elec. Co., 851 F.2d 152, 156 (6th Cir. 1988). Mr. Lumpkin should be barred from testifying about Infinity's allegedly discriminatory actions in denying him employment, as well as about pressure allegedly applied to defendants from outside third parties such as the Urban League.

### 3. Testimony of Rev. Dr. Wayne A. Carter

Rev. Dr. Carter is expected to offer his own opinions about the defendants' management style and about their radio station's "message" to and acceptance by the greater Hartford Community. Dr. Rev. Carter's opinions about such matters are not admissible in this matter, however, as he has not been designated as an expert witness, nor could he be, and his testimony in therefore barred by Fed. R. Evid. 701.[1] If, alternatively, Dr. Rev. Carter intends

---

[1] Rule 701 provides: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Dr. Rev. Carter's opinions about the acceptance of defendants' radio station throughout the Hartford community and its management's intentions and concerns in this regard plainly fail to satisfy Rule 701s' criteria.

to testify about the objectives and goals of Infinity management and its acceptance in the community from a factual standpoint, as opposed to simply offering his opinion, he is of course entitled to do so; provided his testimony is based on personal experience and/or knowledge. As a threshold matter, however, this witness lacks such personal experience or knowledge with respect to Infinity management's motivations, and is not in a position to speak for the Hartford community as a whole. See Hester, 225 F.3d at 185. His testimony on these subjects should be barred as inadmissible.

**4. Testimony of James Green**

Mr. Green, a former employee of Infinity's, is expected to testify, among other things, about his own allegedly discriminatory treatment while at WZMX. For the same reasons as with Mr. Lumpkin above, however, this aspect of Mr. Green's expected testimony should be barred as both irrelevant and inadmissible. Mr. Green's treatment while employed at WZMX is not at issue in this case, and any testimony he might offer on this point is wholly irrelevant. Even if Mr. Green's affidavit testimony regarding a racial basis for the assignment of certain customers and commissions in the sales department could be substantiated - which defendants' deny – it is nonetheless inadmissible at trial because it is not based on any statistically significant data and because it amounts to character evidence of the type expressly prohibited by Rule 608(b). See, e.g., Fisher, 70 F.3d at 1451; Haskell, 743 F.2d at 121; Schrand, 851 F.2d at 156.

Further, any testimony from Mr. Green regarding instances of alleged nepotism on the part of the defendants or their employees should likewise be barred as irrelevant and

improper. Mr. Green alleged in his previously submitted affidavit that his former supervisor in the sales department awarded a contract to her son; but this claim has absolutely nothing to do with the circumstances of the present case, nor, for that matter, with allegations of discrimination. Mr. Green should be proscribed from testifying about either his own experiences of alleged discrimination at WZMX, or instances of alleged nepotism at the station.

## Conclusion

For all of the foregoing reasons, defendants respectfully request that the Court limit the testimony of plaintiff's witnesses at trial as outlined above.

Respectfully submitted,

INFINITY RADIO LICENSE, INC., d/b/a
WZMX-FM; VIACOM, INC.; INFINITY
BROADCASTING CORP.; INFINITY
RADIO, INC.; INFINITY MEDIA CORP.;
and CBS RADIO, INC.,

By their attorneys,


/s/Mark W. Batten_____
Mark W. Batten [ct24751]
Eben A. Krim
Proskauer Rose LLP
One International Place
Boston, Massachusetts 02110
617.526.9600


Ben M. Krowicki
Bingham McCutchen LLP
One State Street
Hartford, CT 06103
860.240.2926
ben.krowicki@bingham.com

Dated: January 3, 2008